IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SHERRI ELLETTE OLSON,

                      Plaintiff,                         OPINION & ORDER

    v.

                                                        12-cv-591-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                    Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Sherri Olson seeks judicial review of a final decision of the Commissioner of Social Security finding that she was not disabled within the meaning of the Social Security Act. Olson principally contends that remand is warranted because the administrative law judge ("ALJ") erroneously rejected the opinion of a physician's assistant who treated Olson for back pain and rheumatoid arthritis. Olson also contends that the ALJ erred by failing to determine the severity of her symptoms caused by rheumatoid arthritis. For the reasons set forth below, the case will be remanded to the Commissioner for rehearing.

## FACTS

### I.  Background

On September 21, 2011, Administrative Law Judge Teresa Hoskins Hart issued a decision denying Olson's claim for Disability Insurance Benefits and Supplemental Security Income. (AR 10.)[1] Olson filed a timely request for review of the ALJ's decision. On June 18, 2012, the Appeals Council denied Oslon's request for review, making the ALJ's decision

---

[1] The citations in this Opinion are drawn from the Administrative Record. (Dkt. #10.)

the final decision of the Commissioner.  (AR 1.)   On August 16, 2012, Olson filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. §405(g).

### A. Medical Records

For many years, Olson has dealt with a multitude of back and neck issues that have caused significant pain. In 1988, Olson had a laminectomy and, in 1999, a discectomy. (AR 254.)  However, both surgeries proved only temporary remedies as the pain returned.

In late 2007, Olson was seen for pain in her right shoulder blade, tingling and numbness in her hands and feet, and stabbing neck pain. (AR 282, 283.)  Abdominal pain and pressure were also noted. (AR 279.)  On May 2, 2008, Olson was seen for pain in her leg and hip stemming from back problems. (AR 279.)   On May 20, 2009, Olson was documented as having numbness on the right side of her neck. (AR 271.)

On September 22, 2009, Olson was noted as having "back pain which develops from the lower back, across the entire lumbar area, and some radiation to her left leg." (AR 259.) On October 9, 2009, Dr. Leona J. Sedlacek noted Olson's "impaired balance and decreased mobility [because of] . . .  chronic neck and back pain." (AR 25.)

On May 10, 2010, Olson had fusion surgery of the L4-5 and L5-1 posterior lumbar. The benefits of the procedure were mixed as pain in her lower back became worse. (AR 232.)  Later that month, she was again seen for "neck pain, head pain . . . upper back pain, leg, knee, foot and shin pains, a feeling of left foot heaviness, tingling in the left foot, right foot pains and ankle pains." (AR 361.)

On June 18 2010, Olson was first seen by a rheumatologist related to purported problems she was having with rheumatoid arthritis.  The rheumatologist noted "elevated

markers for rheumatoid arthritis" and pain originating in her knees. (AR 346.)  On June 25, 2010, Olson had increased burning in her feet.  (AR 348.)  On June 28, 2010, Olson was recognized for having a "positive rheumatoid factor" and continued pain in her feet and knees. (*Id*.) Olson's pain temporarily subsided with cortisone injections. (AR 351.) Nevertheless, on August 26, 2010, those problems resurfaced as well, it being documented that "[Olson] has been doing fairly well until recently and she seems to have had a flare with worsening symptoms of her joints, including her knees, feet and wrists." (AR 356.)

### B. Opinion of John D. Anzak, PA-C.

On June 30, 2011, John D. Anzak, PA-C, completed a work restrictions questionnaire -- a document he prepared after reviewing Olson's medical histroy. (AR 399-400.)  On the questionnaire, Anzak indicated that Olson was limited to a maximum lifting of 20 pounds, could sit continuously for 45 minutes, stand continuously for 30 minutes, and was limited to standing/walking and sitting for less than 2 hours per day. He also indicated that Olson would require four unscheduled breaks of 15 minutes each day and have limited use of her hands, fingers, and arms. (AR 399-400.)

Had Anazk PA-C's opinion not been so heavily discounted by the ALJ, Olson's disability claim may have yielded a different result.  As the Commissioner's rulings make clear, an opinion supporting a disability claim from a medical source, such as a physician's assistant, can trump the opinion of treating physicians, consultative examiners and state examiners in the record. As a result, the primary point of contention between the parties relates to Anazk PA-C's evidence.   See, SSR 06-03p ("Giving more weight to the opinion from a medical source who is not an 'acceptable medical source' [e.g., a physician's

3

assistant] than to the opinion from a treating source does not conflict with the treating source rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2) and SSR 96–2p.").

### C. ALJ's Decision.

On September 21, 2011, the ALJ issued a twelve-page decision. (AR 10-21.)  The ALJ found that Olson met the insured status requirements of the statute through September 30, 2007, and had not engaged in substantial gainful activity since July 16, 2004, the alleged onset date.  The ALJ further found the following severe impairments: Degenerative Disk Disease of the lumbar spine status post L4-L5 and L5-S1 fusion. (AR 12.) The ALJ found that the claimant's Sertoli-Leydig cell cancer of the ovary, stage 1A, GERD and related abdominal complaints and Eustachian tube dysfunction were *non-severe* impairments. (AR 13-14.)   The ALJ further determined that Olson did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 14.)

In determining Olson's residual functional capacity ("RFC"), the ALJ found that she could perform "light work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant is limited to lifting ten pounds maximum, limited to performing postural activities no more than occasionally, and must have a sit/stand option that allows a position change at least every thirty minutes." (R14.)   Based on the vocational expert's testimony, the ALJ found at the final step in the evaluation process that there were a significant number of jobs in the national economy that Olson could perform. (*Id.*)  Accordingly, the ALJ found that Olson was not under a disability as defined by the statute.

## OPINION

A federal court reviews an ALJ's decision with deference and will uphold a denial of benefits unless it is not supported by substantial evidence or is based on an error of law.  42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992).  A decision cannot stand if it lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).  The ALJ must also explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id.; see Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Here, Olson principally contends that remand is merited because: (1) the ALJ improperly evaluated the opinion of J. Anzak, a physician's assistant who treated Olson for back pain and for rheumatoid arthritis; and (2) the ALJ failed to make an express finding at Step Two as to the severity of Olson's symptoms caused by rheumatoid arthritis.  The court agrees that both issues require remand.

**I.  Opinion of Anzak PA-C**

Remand is appropriate with respect to the first issue because the ALJ did not adequately explain her reasons for dismissing the opinion of Anzak PA-C in accordance with SSR 06-03p.  When weighing a medical source's opinion for the purpose of determining the extent of a claimant's physical limitations, SSR 06-03p requires consideration of the following factors: "(1) How long the source has known and how frequently the source has seen the individual; (2) How consistent the opinion is with other evidence; (3) The degree to which the source presents relevant evidence to support an opinion; (4) How well the source explains the opinion; (5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) Any other factors that tend to support or refute the opinion."

These factors are set in the following context:

> With the growth of managed *health care in recent years and the emphasis on containing medical costs*, medical sources who are not "acceptable medical sources," such as nurse practitioners, *physician assistants*, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, *are important and should be evaluated on key issues such as impairment severity and functional effects*, along with the other relevant evidence in the file.

*See* SSR 06-03p (emphasis added).

In giving Anzak's opinion with limited weight, the ALJ explained that a physician's assistant is not an "acceptable medical source."  Other than tacit reference to the "SSA regulations," however, the ALJ provides no further explanation as to *why* Anzak's opinion was discounted because of his status as a non-acceptable medical source.  For instance, there is no real discussion of the length or frequency with which Olson saw Anzak.  As held by

this court (and others), failure to meaningfully address these factors brings into question the adequacy of the ALJ's analysis. *See Thompson v. Colvin*, No. 12-cv-375, 2014 WL 1371290, at \*6-7 (W.D. Wis. Apr. 8, 2014) (discussing the frequency factor at length and its importance as noted in SSR-06-03p); *see also Saxon v. Astrue*, 781 F. Supp. 2d 92 (N.D.N.Y.2011).  The discussion in *Thompson* seems particularly relevant in the instant case because Olson states that she was seen by Anzak on a regular basis at Gundersen Lutheran-Whitehall Clinic. (AR 202.)  No effort was made by the ALJ to address this factor or any relevant evidence.

Read in isolation, the ALJ's justification discounts Anzak's opinion solely because he is a physician's assistant, but this is not at all what is actually mandated in SSR 06-03p. Indeed, opinions from so-called "non-acceptable" medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p.  Having failed to provide sufficient explanation for discounting Anzak's opinion, and since SSR 06-03p places high importance on these opinions, the court has little choice but to remand the ALJ's decision for further explanation. *See Herron*, 19 F.3d at 333.

The ALJ's second justification for discounting Anzak's opinion is similarly deficient. The ALJ suggests the opinion be afforded little weight because it was based on Olson's "self report," rather than objective testing and evaluation. (AR 18.)  As support, the ALJ pointed to Exhibit 4F/18, but this exhibit is a medical record dated October 25, 2010. (AR 360.) The report describing Olson's limitations is dated June 30, 2011.  (AR 400.)   That report states that it was completed after review of Olson's medical-chart history.  (*Id.*)   Since the ALJ relied on evidence not only incomplete, but not reflective of the entire record, he failed

to substantiate his finding and remand is again required.  *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

Because the ALJ's third reason shares similar deficiencies as the first, the court must reject it as well.  The ALJ states that "Mr Anzak's opinion is not consistent with the treatment record or the record as a whole."  (AR 18.)  This abbreviated statement does little to further the ALJ's analysis.  Indeed, the court finds it wholly conclusory because the ALJ fails (1) to detail *how* his opinion is consistent with other evidence in the record; and (2) to identify any evidence (with the exception of Exhibit 4F/18) that would support or detract from Anzak's opinion.  As addressed above, even the reference to Exhibit 4F/18 is deficient since it was superseded by Anzak's report dated June 30, 2011.  Because the ALJ's reasoning lacks adequate analysis, the court again has no choice but to remand this issue for reconsideration.  *See Strobach v. Colvin*, 12-CV-50012, 2014 WL 1388285, *12 (N.D. Ill. Apr. 9, 2014); *Christel v. Astrue*, No. 09–CV–36, 2009 WL 2240327, *6 (E.D. Wis. July 24, 2009).

Compounding the ALJ's factual error is his misapplication of the sixth factor in SSR 06-03p itself.  As indicated in the Commissioner's own brief, this factor evaluates *not* whether Anzak's opinion is consistent with the record as a whole; rather, the factor requires evaluation of whether Mr Anzak's opinion is "consistent with other evidence."  Comparing an opinion with the "record as a whole" is a factor used when an ALJ weighs an *acceptable* medical source.  *See* SSR 06-03p.  The language that is used when an ALJ weighs a so-called *non-acceptable* medical source is "how consistent the opinion is with other evidence."  *Id*.

This is a subtle, but arguably important distinction and one that cuts against the Commissioner's position.[2]  Indeed, on close inspection of the record, Anzak's opinion seems to be consistent with other evidence.  For example, Dr. Leahy noted an "MRI reveal[ing] severely degenerative L4-L5 disk disease with end plate changes in . . . vertebral bodies." (AR 16.)  He also recommended epidural steroid injections and trial medications, among other things.  (*Id*.)  Similarly, Nurse Wenger's notes from the neurosurgery clinic are consistent with at least parts of Anzak PA-C's observations.  (AR 16.)  *See Dogan v. Astrue*, 751 F. Supp. 2d 1029, 1037-38 (N.D. Ind. 2010) (discussing *other evidence*).

In the end, Anzak provides evidence that is critical to Olson's disability claim.  The fact that it was discounted without meaningful explanation and in such cursory fashion is problematic at best.  Accordingly, this matter will be remanded for further explanation.

## II. Rheumatoid Arthritis

Olson also contends that the ALJ erred by failing to account for the severity of her symptoms caused by rheumatoid arthritis.  By failing to make this finding, Olson contends that the ALJ's reasoning is deficient at Step Two of the sequential evaluation process.  Again, the court agrees.  Pursuant to 20 C.F.R. §§ 404.1520, 416.920, the ALJ is required to follow a five-step analysis established by the Social Security Administration.  One of these steps requires the ALJ to consider whether the claimant has a severe impairment.  *See also Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985).

---

[2]  While this analysis must only pass a minimum threshold, but some effort is warranted, particularly in a case such as this where a physician's assistant is involved.  *See Herron,* 19 F.3d at 333 (the ALJ "must articulate at some minimal level his analysis of the evidence").

Here, the ALJ made no finding as to whether Olson's diagnosis of Rheumatoid Arthritis ("RA") is severe or non-severe despite the existence of medical evidence supporting the diagnosis in the record.  As a result, the court also has no way to assess whether her symptoms, in combination with other limitations, are disabling.  Even if there were *insufficient* evidence to support the existence of *any* RA condition, the ALJ should have so stated.  This is what the regulations require.

Moreover, even on a cursory review, there *is* evidence in the record that Olson had symptoms consistent with RA dating back to mid-2010.  For example, on June 18, 2010, a rheumatologist indicated that Olson had "elevated markers for rheumatoid arthritis." (AR 346.)  On June 28, 2010, Olson was recognized as having a "positive rheumatoid factor [and] continues to have a lot of pain in her feet, including stiffness . . . in her knees." (AR 348.)   Throughout the remainder of 2010, Olson was seen for further pain related to her RA condition and worsening symptoms.[3]  (AR 356, 361, 382.)

While there is some discussion by the ALJ of this evidence, there is no express finding that Olson's condition was characterized as severe or non-severe for purposes of Step Two of the evaluation process.  This deficiency is amplified by fact that the ALJ took the time to describe other conditions as severe/non-severe.  (AR 12-13.)  Indeed, since no

---

[3] Notably, in *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 246 (6th Cir. 2007), the Sixth Circuit examined an ALJ's finding that the claimant did not have RA.  The *Rogers* court overturned a district court decision upholding the ALJ's finding because the record contained substantial evidence of the condition, while only one physician found that the condition did not exist. The court indicated that the ALJ's failure to articulate support for his conclusion merited remand.  Specifically, the court held "the ALJ failed to explain in any illuminating way why he elected to elevate the opinion of a single non-treating non-examining orthopedic surgeon over four conflicting opinions, three of which belonged to Rogers' treating physicians, one of whom is a rheumatologist. Because this explanation by the ALJ is lacking, his rejection of rheumatoid arthritis as a severe impairment does not meet the substantial evidence standard." *Id*. In this case, the ALJ's decision does not even rise to the level considered in *Rogers,* since the ALJ here failed to acknowledge the condition, let alone indicate any analysis as to whether it was or wasn't a severe impairment, and failed to note *any* medical opinion supporting his view.

finding is made with respect to Olson's rheumatoid arthritis condition at all, a remand is necessitated.[4]

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Sherri Olson's application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 24th day of September, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[4] "Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record."  *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).